

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
BILLINGS DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, Plaintiff/Respondent, vs. GARRETT DEAN DOOR, SR., Defendant/Movant. | Cause No. CR 14-56-BLG-SPW<br><br>ORDER DENYING § 2255 MOTION AND GRANTING AND DENYING CERTIFICATE OF APPEALABILITY |

This case comes before the Court on Defendant/Movant Garrett Dean Door's motion to vacate, set aside, or correct his sentence, pursuant to 28 U.S.C. § 2255. Door is a federal prisoner proceeding pro se.

## I. Preliminary Review

Before the United States answers the motion, the Court must decide whether "the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief." 28 U.S.C. § 2255(b); *see also* Rule 4(b), Rules Governing Section 2255 Proceedings for the United States District Courts. A petitioner "who is able to state facts showing a real possibility of constitutional error should survive Rule 4 review." *Calderon v. United States Dist. Court*, 98 F.3d 1102, 1109 (9th Cir. 1996) ("*Nicolas*") (Schroeder, C.J., concurring) (referring to Rules Governing § 2254 Cases). But the Court has a duty to

1

"eliminate the burden that would be placed on the respondent by ordering an unnecessary answer." Advisory Committee Note (1976), Rule 4, Rules Governing § 2254 Cases, *cited in* Advisory Committee Note (1976), Rule 4, Rules Governing § 2255 Proceedings.

## II. Background

A grand jury indicted Door on one count of aggravated sexual abuse, a violation of 18 U.S.C. § 2241(a), and one count of assault with intent to commit aggravated sexual abuse, a violation of 18 U.S.C. § 113(a)(1). The indictment alleged that Door used force to engage in a sexual act with E.S. and that he struck her face and strangled her with his hands. Jurisdiction was predicated on the Major Crimes Act, 18 U.S.C. § 1153(a). *See* Indictment (Doc. 1) 2.

Trial commenced on December 15, 2014. Testimony concluded on December 17, 2014. The case went to the jury at about noon. After deliberating for a little less than two hours, the jury convicted Door on both counts. Minutes (Docs. 89, 91, 92); Verdict (Doc. 100).

On June 3, 2015, Door was sentenced to serve a total of 327 months in prison, to be followed by a life term of supervised release. *See* Minutes (Doc. 60); Judgment (Doc. 61) at 2-3.

Door appealed, challenging the admission of testimony from a previous victim under Federal Rules of Evidence 413 and 403. The Ninth Circuit Court of

Appeals affirmed his conviction on October 19, 2016. He filed a petition for writ of *certiorari*, but it was denied on February 21, 2017. *See* Clerk Letter (Doc. 78) at 1.

Door's conviction became final on February 21, 2017. He timely filed his § 2255 motion on September 8, 2017. *See* 28 U.S.C. § 2255(f)(1); *Gonzalez v. Thaler*, 565 U.S. 134, 150 (2012); *see also* Mot. § 2255 (Doc. 79) at 12, Supp. (Doc. 79-1) at 10; *Houston v. Lack*, 487 U.S. 266, 276 (1988). He also filed a timely supplement alleging that the evidence he describes in Claims 1, 3, and 4 was inadmissible and that he could not have been convicted if the evidence had not been admitted. *See* Second Supp. (Doc. 81) at 1-2.

### III. Claims and Analysis

Each of the following claims could have been raised at the trial stage and on appeal. None were, so all are defaulted. *See United States v. Frady*, 456 U.S. 152, 162, 168 (1982). Door explains that counsel was ineffective for failing to raise the claims. *See* Mot. § 2255 (Doc. 79) at 4-8; Supp. (Doc. 79-1) at 5. The Court will consider the merits of the defaulted claims as well as the merits of the accompanying claim of ineffective assistance.

The existing record of the case shows that Door is not entitled to relief on any of his claims.

## A. Claim 1

Door claims, first, that law enforcement officers should have obtained a warrant from a Crow Nation Tribal Court judge to search the remote, rural area where the incident occurred. *See* Mot. § 2255 (Doc. 79) at 4 Ground One; Second Supp. (Doc. 81) at 1-2.

When the victim reported the crime, Big Horn County Deputy Turner responded to the Rodeway Inn in Hardin. *See* 1 Trial Tr. (Doc. 69) at 41:21-42:3, 64:24-65:2, 131:18-132:6. Hardin is not on the Crow Indian Reservation. *See* Fed. R. Evid. 201(b). The victim identified her assailant, who "was a tribal member." Turner contacted the Bureau of Indian Affairs. *See* 1 Trial Tr. at 133:23-18. FBI Agent Walter was dispatched to the Rodeway Inn. He took the victim back to the scene of the crime to determine whether it was on or off the Crow Indian Reservation. It was on the Reservation. *See* 2 Trial Tr. (Doc. 70) at 166:21-167:1, 168:21-170:12, 177:14-18.

As explained at trial, federal officers attempted to find out who owned the property where the crime occurred but were unable to do so. They entered the property and searched it because the victim's appearance and statements gave them probable cause to believe a crime occurred in the location she identified and because there were two exigent circumstances. First, it was beginning to rain, which would likely destroy at least some evidence. Second, it was getting dark

4

and cold. After the victim escaped from Door, she got back into her vehicle and drove away, leaving Door stranded and in a highly intoxicated state. He might have still been on the property and unable to protect himself in the changing weather conditions. *See* 2 Trial Tr. (Doc. 70) at 172:2-173:20, 179:5-12. To the extent a warrant would have been required, the United States' failure to obtain one was excused by the combination of probable cause and exigent circumstances. *See United States v. Alamailo*, 313 F.3d 1188, 1192-93 (9th Cir. 2002).

But the Fourth Amendment did not even apply. The search was conducted in an open field. *See* Gov't Exs. Docs. 45-2 through 45-5. The Fourth Amendment protects "persons, houses, papers, and effects." U.S. Const. amend. IV. An open field is none of these things. It may be fenced with locked gates and posted with "No Trespassing" signs. It may be thickly wooded or too vast to be taken in by the human eye. It may not be visible at all from a publicly accessible location such as a road. *See Oliver v. United States*, 466 U.S. 170, 177-81 & nn.9-11 (1984). Regardless, "open fields do not provide the setting for those intimate activities that the [Fourth] Amendment is intended to shelter from government interference or surveillance." *Id.* at 179. No warrant is required as a precondition to entering or searching an open field.

Door appears to believe federal officers must obtain leave from a tribal court before entering a reservation, or at least before entering the Crow Indian

5

Reservation. But he cites no authority to support his belief. This Court is not aware of any such requirement.

Door's allegations do not state a claim on which relief might be granted. This claim is denied.

### B. Claims 2 and 3

Door contends that he was photographed and given a preliminary breath test at the time of his arrest but did not consent to either. He further contends that "[t]he State unlawfully detained me" and "had no jurisdiction within the Crow country." Mot. § 2255 at 5 Ground Two. Door also asserts that his clothing was collected and buccal swabs were taken without his permission, a warrant, or a *Miranda* warning. *See* Mot. § 2255 at 6 Ground Three; *see also* Second Supp. (Doc. 81) at 1-2.

#### 1. Arrest and Detention, Photographs, *Miranda*

Several hours after the victim was assaulted, Big Horn County Deputy Turner arrested Door in Hardin for taking a sandwich from a convenience store and for having an open container. *See* 2 Trial Tr. at 293:23-294:8. Because Hardin is not on the Crow Indian Reservation, *see* Fed. R. Evid. 201(b), Turner did not act unlawfully in arresting Door.

A defendant does not have a "reasonable expectation of privacy" in the outward appearance of his face and clothing, *see Katz v. United States*, 389 U.S.

6

347, 360 (1967) (Harlan, J., concurring); *United States v. Doe*, 457 F.2d 895, 898 (2d Cir. 1972), so no warrant was required to photograph Door's face, jeans, and boots, *see* 1 Trial Tr. (Doc. 69) at 135:13-138:5.

A *Miranda* warning is required only when a person is interrogated. *See Miranda v. Arizona*, 384 U.S. 436, 467-68 (1966). There is evidence that Door was *not* interrogated at the time of his arrest, *see* 2 Trial Tr. at 179:21-180:6, and, at any rate, no statement he made at that time was introduced into evidence at trial. (His interview a few days later is addressed under Claim 4.)

Door was likely subjected to an inventory search, but no evidence obtained in an inventory search was introduced against him at trial.

With respect to each of these issues, no legal basis for a motion to suppress appears, and thus Door also suffered no prejudice. There is no reason to believe counsel was ineffective. This claim is denied.

### 2. Clothing and Swabs

The seizure and admission into evidence of Door's clothing, trace evidence collected from his body, and a breath test require a different analysis. The question is whether it was unreasonable for counsel to fail to challenge the admission of this evidence and whether Door was prejudiced as a result of its admission.

FBI Agent Walter testified at trial that he collected Door's clothing and took

7

swabs "from around his mouth and lips"[1] as well as from his hands and fingernails. He did not ask Door's permission because Door was too intoxicated to give meaningful consent. Walter stated that he acted without a warrant because he believed he had probable cause and exigent circumstances. *See* 2 Trial Tr. at 180:5-182:6.

Walter did indeed have probable cause to collect Door's clothing and to take forensic swabs in the minimally intrusive manner used here. The victim had identified Door by his full name, *see* 1 Trial Tr. at 50:22-51:19, the visible marks on his face and neck were consistent with the victim's description of the incident, and the mud on his boots and jeans was consistent with the conditions the officers had observed at the scene of the crime, *id.* at 60:21-61:8, 135:2-138:5. These facts gave probable cause to believe trace evidence would be found on Door's body and clothing. Such ephemeral evidence is likely to be lost or destroyed if not promptly collected. Further, swabbing a defendant's face, hands, and fingernails is a slight intrusion on parts of the body that are regularly exposed to public view. Requiring Door to remove his jeans and put on other clothing is also minimally intrusive, and he alleges no facts that made the manner of the seizure unreasonable.

---

[1] The agent testified that Door's buccal swabs—that is, the ones taken from the inside of his mouth—were collected under a warrant. *See* 2 Trial Tr. (Doc. 70) at 198:9-199:7. The swabs at issue here were taken from the skin around Door's mouth and lips. Door does not dispute what the agent said at trial.

A warrant is not required if officers have probable cause to support a search or seizure, if exigent circumstances make it impractical to obtain a warrant before conducting the search or seizure, and if the manner of conducting the search or seizure is reasonable. *See, e.g., Schmerber v. California*, 384 U.S. 757, 770-72 (1966). All these factors were met here, and there is no reasonable basis to infer that counsel was ineffective. This claim is denied.

### 3. BAC

Deputy Turner administered a breath test to which Door says he "didn't voluntarily consent." Mot. § 2255 at 5 Ground Two. Door's blood-alcohol level several hours after the incident was 0.306. *See* 2 Trial Tr. at 179:22-180:1, 376:9-16. The record is not clear as to why the breath test was given. Door was not charged with public intoxication or driving under the influence but only with having an open container and stealing a sandwich. But Door's blood-alcohol level several hours after the incident was not especially probative evidence of anything at issue at trial. It was relevant to explain why Door was not interviewed immediately upon his arrest, but it was not relevant to explain either how intoxicated Door was at the time of the incident or whether he was intoxicated at the time of his interview three days after the incident and arrest.

There is no reason to suppose admission of Door's BAC several hours after the incident affected the jury's verdict. Any reasonable attorney might have

9

foregone a challenge to its admissibility. This claim is denied.

### C. Claim 4

Door avers that he was interrogated in custody on May 9, 2014. He states that he was "a long-time functioning alcoholic," had difficulty expressing himself, and "had a bad hangover and [couldn't] think straight." He claims the FBI agent took advantage of the situation, "was talking loud," and made Door feel pressured. Door contends he did not understand the agent's questions and "was not given a full and effective warning of my rights." Mot. § 2255 at 8 Ground Four; Second Supp. (Doc. 81) at 1-2.

The interview was delayed from Tuesday, the day Door was arrested, to Friday, so that he could sober up. He signed a *Miranda* advisement form, asked questions about it, and received answers from the interviewing officers. *See* 2 Trial Tr. at 184:2-185:10. Agent Walter testified about what was said in the interview and Door's demeanor throughout it. *See* 2 Trial Tr. at 182:13-197:7, 201:13-204:8, 209:20-224:11, 228:9-229:5, 229:23-230:18. So did Door. *See id.* at 292:17-293:22, 296:15-299:2, 335:13-25, 342:5-348:9, 357:11-24, 359:8-12, 368:16-370:13, 373:12-14. In rebuttal, the United States played for the jury the audio recording of the interview. *See id.* at 375:12-379:6; 3 Trial Tr. (Doc. 71) at 394:16-395:4.

The jury was instructed it must decide how much weight to give Door's

10

statement and that it should "consider all the evidence about the statement, including the circumstances under which the defendant may have made it." Final Jury Instr. No. 36 (Doc. 40 at 22); *see also* Final Jury Instr. Nos. 17, 22 (Doc. 40 at 3, 8) (defendant's trial testimony).

Door's allegations do not support an inference that his statement was involuntary or that it was unreasonable for counsel to fail to challenge the statement's admissibility. There is evidence that Door was advised of his *Miranda* rights. *See* 2 Trial Tr. at 184:4-185:10, 203:2-20. Further, in the interview, Door gave reasonable responses to the agent's questions. When Door said something that was contradicted by other evidence or statements, the agent pointed out the contradiction, Door recognized it, and then corrected or altered his account of events. Door does not allege any facts that would have enabled counsel to show that Door was able to do these things but was not able to understand what he or the agent were doing and saying. He says only that appellate counsel should have raised the issue. *See* Mot. § 2255 (Doc. 79) at 8.

Most people who undergo custodial interrogation probably are not in their sharpest mental and emotional state. But there is no reason to infer that Door's "will was overborne," *United States v. Preston*, 751 F.3d 1008, 1016 (9th Cir. 2014), by coercive police conduct, by Door's own characteristics, or by the way in which all the factors peculiar to the agents and to Door played out under the

11

circumstances, *see id.* at 1017. Equally, there is no reasonable probability a motion to suppress would have been granted, much less that an appellate court would find plain error. This claim is denied.

**D. Claim 5**

Finally, Door alleges that "the government did not produce any evidence that I have some quantum of Indian blood." Supp. (Doc. 79-1) at 3, 5.

The jury was instructed that the United States must prove Door was an Indian person. *See, e.g.*, 3 Trial Tr. (Doc. 71) at 402:10-19, 403:9-21; *see also* 18 U.S.C. § 1153(a). It was not instructed about the meaning of the term. It did not know the United States must prove Door had "a parent, grandparent, or great-grandparent who [was] clearly identified as an Indian," *United States v. Bruce*, 394 F.3d 1215, 1223 (9th Cir. 2005), or that Door had "some quantum of Indian blood," *United States v. Zepeda*, 792 F.3d 1103, 1006 (9th Cir. 2015) (en banc).[2]

To prove Door was an "Indian person," the United States introduced a written memorandum certifying that Door's name was "listed on the Crow Tribal Census Rolls." The FBI agent who testified about the certificate called it "a record that is maintained by the Bureau of Indian Affairs" and said it "indicates that

---

[2] This decision was issued after Door's trial. But the law that applied at the time of Door's trial differed from what is stated here only with respect to the second, "recognition" element of being an "Indian person." *See Zepeda*, 792 F.3d at 1106 (describing the now-superseded "gloss" of *United States v. Maggi*, 598 F.3d 1073, 1080-81 (9th Cir. 2010)). Door does not contest the "recognition" element in his § 2255 motion.

12

Garrett D. Door, Sr., is an enrolled member of the Crow Indian Tribe." 2 Trial Tr. at 197:15-24.[3]

The memorandum does not say anything about Door's blood or ancestry. *See* Gov't Ex. 1 (Doc. 45-1) at 1. The United States did not introduce any testimony or documentary evidence from the Crow Tribe to establish that a person on the tribal census roll would necessarily have some Indian blood. No other evidence showed that Door had any degree of Indian blood.

As the Ninth Circuit recently observed in an Arizona case, even where there is "other circumstantial evidence" of Indian status, as there was here,[4] a certificate merely stating that a person is a member of a Tribe does not prove the person has any Indian blood. "[W]ithout any evidence regarding the basis for [the defendant's] enrollment in the tribe," "no rational jury could find beyond a reasonable doubt the blood-quantum element" of the offenses at issue. *United*

---

[3] The agent also said "we sometimes call it the certificate of Indian blood." *Id.* at 197:17-18. The label is not very accurate in this case.

[4] The victim testified that Door asked her "to take him to Crow [Agency]," 1 Trial Tr. (Doc. 69) at 44:21-25, which is on the Crow Indian Reservation. On the way there, they talked about Crow culture and the fact that "the Crow native people are some of the only people who still speak their native language." *Id.* at 48:22-49:6. When they arrived at Crow Agency, Door wanted to "stop at his son's house and a friend's house to see if they were home." *Id.* at 50:1-4. They stopped at the post office to ask the post mistress if his "check" had arrived. The post mistress knew Door "by sight and by name," *see id.* at 50:22-51:12, and an FBI agent testified that Door told him the "check" was "Cobell money," "a land settlement that has been offered to reservations by the U.S. government in a settlement," 2 Trial Tr. (Doc. 70) at 188:22-189:4. Another witness, who lived on the Reservation and testified about a previous assault by Door, said that she saw Door in Billings in 2009, recognized him as a friend of her brother's, and "wanted to talk" to him "since he was a Crow." *Id.* at 276:9-15, 277:1-24.

States v. Seymour, 684 Fed. Appx. 662, 663, No. 12-10072 (9th Cir. Mar. 23, 2017) (unpublished mem. disp.) (vacating and remanding for entry of judgment of acquittal).

But failure to challenge Door's status as an Indian person could not fall outside the wide range of reasonable professional assistance, *see Strickland*, 466 U.S. at 687-88, because there was no reason to doubt that Door was, in fact, an Indian person. It is not ineffective, for example, for counsel to fail to move to dismiss when the United States omits evidence that a bank was federally insured on the date of a robbery, provided the bank was actually federally insured at the time and the United States presented *some* evidence that it was. *See United States v. Ratigan*, 351 F.3d 957, 964-65 (9th Cir. 2003).

Likewise, here, the United States produced *some* evidence of Indian status. And, in the defense case in chief, Door admitted he was an Indian person. Counsel said in his opening statement that Door was "a Native American Crow Indian person." 1 Trial Tr. (Doc. 69) at 33:1-2. Although Door "can certainly speak English" and had "lived in this [mainstream] culture and in the Crow culture," an interpreter was present at trial "so that if Garrett has trouble expressing a phrase in English, he can resort to Crow to speak, to convey it better." *Id.* at 33:20-25. Door himself testified that he told the victim, "I'm a Crow Indian, full-blood Crow Indian." 2 Trial Tr. at 303:1-4.

14

This claim is denied.

## V. Certificate of Appealability

"The district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." Rule 11(a), Rules Governing § 2255 Proceedings. A COA should issue as to those claims on which the petitioner makes "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). The standard is satisfied if "jurists of reason could disagree with the district court's resolution of [the] constitutional claims" or "conclude the issues presented are adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003) (citing *Slack v. McDaniel*, 529 U.S. 473, 484 (2000)).

Door's claim that counsel was ineffective for failing to appeal the United States' insufficient evidence of Indian status makes a substantial showing that he was deprived of a constitutional right. Although the Court has little doubt the procedural ruling is correct, the claims meets the standards for issuance of a COA.

Door's other claims, however, do not meet the relatively low threshold for issuance of a COA. Federal officers did not require a warrant to enter the Crow Indian Reservation or to search open fields located on it, and even if they did, they had both probable cause and exigent circumstances. Door was arrested by a state officer off the Reservation for a state offense committed in an off-Reservation

15

store. No warrant is required to photograph a person. Probable cause and exigent circumstances authorized collection of Door's clothing and swabs from his hands, fingernails, and the outside of his mouth and lips, and there is no indication the manner of the collection was unreasonable. The record does not make clear why a breath test was administered, but Door's blood-alcohol concentration several hours after the incident was not particularly relevant to any potential issue at trial, so Door was not prejudiced by its admission into evidence. Door's claim that his statement should have been excluded also lacks merit. He was interviewed the Friday after his Tuesday arrest, so that he had plenty of time to sober up. His allegations do not show that his will was overborne, there is evidence that he signed a *Miranda* form. Finally, the jury was able to hear a recording of his statement, so it could decide for itself whether the circumstances indicated Door understood and responded sensibly to the agent's questions.

Accordingly, IT IS HEREBY ORDERED:

1. Door's motion to vacate, set aside, or correct the sentence under 28 U.S.C. § 2255 (Docs. 79, 81) is DENIED.

2. A certificate of appealability is GRANTED as to Door's claim that the United States failed to introduce sufficient evidence of his Indian blood and counsel's failure to seek dismissal on that basis. A certificate of appealability is DENIED as to all other claims. The clerk shall immediately process the appeal if

Door files a Notice of Appeal.

3. The clerk shall ensure that all pending motions in this case and in CV 17-119-BLG-SPW are terminated and shall close the civil file by entering judgment in favor of the United States and against Door.

DATED this 23rd day of May, 2018.

*Susan P. Watters*
Susan P. Watters
United States District Court